

04/16/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMERICAN REIT, INC., | § | Case No. 07-40308 |
| | § | (Chapter 11) |
| Debtor. | § | |

## MEMORANDUM OF DECISION

This Court has heard and considered the "Objection to Claim #1 Filed by Chris Raesz" and the "Objection to Claim #2 Filed by William Trantham" filed by the Debtor, American REIT, Inc. in the above-referenced case, and the responses and objections thereto filed by Chris Raesz and William Trantham (collectively, the "Claimants"). Upon the conclusion of the hearing, the Court invited the parties to file post-hearing briefs and scheduled the matter for a later ruling. This Memorandum of Decision disposes of all issues pending before the Court with respect to the Debtor's objections to claim numbers one and two.

## Jurisdiction

This Court has jurisdiction to consider the Debtor's objections pursuant to 28 U.S.C. §1334(a). The Court has authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

## Background

The Debtor became indebted to the Claimants pursuant to an Attorney Consultation and Fee Contract for Contingency Cases (the "Fee Agreement")

signed on May 7, 2005 and effective as of September 11, 2004. The Debtor's president and sole officer, Norman Retherford, signed the Fee Agreement for the Debtor, and William Trantham signed the Fee Agreement for himself and Chris Raesz. The Claimants assert that the indebtedness is secured by their interest in the proceeds of the litigation that was the subject of the Fee Agreement.

In particular, in early 2005, Crosstex North Texas Pipeline, Inc. ("Crosstex") sought to enter and survey certain real property owned by the Debtor for the purpose of obtaining an easement. Crosstex obtained access to the Debtor's property after filing an injunction action against the Debtor in state court. Crosstex subsequently entered into negotiations with the Claimants, as the attorneys for the Debtor, seeking to obtain a permanent easement from the Debtor for the construction of a natural gas pipeline. At Retherford's request, the Claimants negotiated an agreement with Crosstex to move the planned pipeline to a less disruptive location on the Debtor's property. Crosstex ultimately offered the Debtor $125,969 as compensation for the requested easement and damages, if any, to the remainder of the Debtor's property. Retherford refused this offer. As a consequence, Crosstex initiated a condemnation action against the Debtor, as the owner of the subject property, and against two entities that held mechanic's liens on the subject property.

In the condemnation action, the state court appointed three special commissioners to assess the anticipated damages to the Debtor's property. On October 25, 2005, the commissioners entered an award in favor of the Debtor in

the amount of $169,100. Crosstex thereafter deposited the sum of $169,100 into the registry of the state court.

The Claimants, as counsel for the Debtor, objected to the commissioners' award on November 21, 2005. The objection was filed in state court, and, among other things, demanded that the "cause be tried and determined in this court as other civil matters."

The primary dispute between Crosstex and the Debtor was the Debtor's contention that the damages award should include an alleged drop in the market value of the subject property as a result of the potential dangers posed by a natural gas pipeline. The Claimants, as counsel for the Debtor, obtained an expert appraisal of the damages to the Debtor's property and drafted the Debtor's responses to discovery requests propounded by Crosstex. The expert reports obtained by Crosstex and the Debtor were the subject of a contested pre-trial hearing in state court. After several continuances, the matter was scheduled to be tried by a jury on March 13, 2007. However, in February 2007, Retherford informed Trantham that he was dying and wanted to settle the litigation with Crosstex. Retherford authorized Trantham to make a settlement offer of $600,000, which Crosstex rejected. (Retherford's testimony denying that this conversation took place or that he authorized a settlement offer of $600,000 was not credible.)

In addition to the condemnation matter, the Claimants represented the Debtor with respect to unrelated litigation initiated by the Debtor against McCarty Construction. The Debtor and/or the Claimants requested numerous continuances

of the trial date in the suit against McCarty Construction. The re-scheduled trial was to begin on February 20, 2007.[1]

On February 19, 2007, the Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Claimants filed timely claims against the Debtor, which were assigned claim numbers one and two by the Court, in which they each assert an undivided one-half interest in 40% of the commissioners' award in the condemnation action. Their claims are based on the Fee Agreement, which provides in pertinent part:

> 2.01 In consideration of services rendered and to be rendered by the Attorney, the Client hereby agrees to pay to Attorney the following amounts on any settlements, monies, judgments or other consideration which have or may be paid on this legal matter:
> 33 1/3% if collected prior to the filing of a lawsuit,
> 40 percent if collected after said filing of a lawsuit,
> And 50 percent upon an appeal being perfected to a higher court….
>
> 3.01 In consideration of Attorney's services, the Client hereby sells, conveys and assigns to the Attorney an interest in the Client's claim and cause of action as set forth in paragraph 2.01, and in any action, compromise, settlement, judgment, payment of services, profits or recovery thereon….
>
> 6.01 All expenses incurred by the Attorney in the handling of this project shall be deducted from the gross settlement proceeds at the time the case is settled or resolved if same have not been paid in accordance with paragraphs 2.02 and 2.03 above….

---

[1] In its post-trial brief, the Debtor complains of the Claimants' handling of the litigation against McCarty Construction. The Debtor asserts that the Claimants mishandled the litigation against McCarty Construction and Crosstex, sought to force Retherford to settle, and then abandoned the litigation when Retherford refused. As discussed more fully in this Memorandum of Decision, the Court is convinced the Claimants did not abandon the condemnation action, but were, instead, instructed by Retherford to settle based, in part, on Retherford's representation to Trantham that he was dying.

Based on these provisions of the Fee Agreement, the Claimants assert that they own and are secured by $67,640 of the amount deposited by Crosstex into the registry of the state court pursuant to the commissioners' award.[2]

On March 13, 2007, the Debtor filed a Motion to Reject Executory Contract in which the Debtor sought to reject the Fee Agreement and hire new counsel in connection with the condemnation action. Trantham objected to the motion on the grounds that the Fee Agreement was no longer executory and that payment was due and owing under the Fee Agreement. On April 30, 2007, the Court entered an Order on Debtor's Motion to Reject Executory Contract in which the Fee Agreement was "rejected to allow the hiring of new counsel only." The Court expressly recognized the outstanding claims of Trantham and Raesz and ordered that the rejection would not prejudice their right to assert claims pursuant to the Fee Agreement.

The Debtor asserts identical objections to the claims filed by Trantham and Raesz. In particular, the Debtor objects that the Claimants (1) did not perform the work set forth in the claims; (2) failed to properly perform the work and failed to provide the Debtor with any records of the work; (3) the Fee Agreement does not relate to the condemnation proceeding, but only to the earlier proceeding to obtain access to the Debtor's property; (4) the Fee Agreement has been rejected by the

---

[2] The Fee Agreement provides that the Claimants are entitled to the payment of their expenses in addition to a portion of the commissioners' award. However, the Claimants are only seeking to recover a portion of the commissioners' award in claim numbers one and two. Retherford testified that he paid the Claimants $2,500 for their expenses in connection with the condemnation action, and he represents in his post-hearing brief that $1,800 of this amount was refunded to him prior to bankruptcy.

Debtor pursuant to an order of this Court; and (5) the value of the Claimants' services must be decided on the merit of the actual services rendered. The Court heard the Debtor's objections on February 7, 2007. In order to engage in a closer examination of the parties' evidence and opposing testimony, the Court took the matter under advisement at the conclusion of the hearing.

## Legal Discussion

A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim and is deemed allowed unless a party in interest objects. *See* 11 U.S.C. §502(a); FED. R. BANKR. P. 3001(f). A proof of claim, however, does not qualify for *prima facie* evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules. *See First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J Dairy, Inc.)*, 112 B.R. 297, 300 (W.D. Ark. 1989). Bankruptcy Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:

> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c). Likewise, if a creditor claims a security interest in property of the debtor, Bankruptcy Rule 3001(d) requires the creditor to accompany his proof of claim with evidence that the creditor perfected a security interest.

Hence, the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with Bankruptcy Rule 3001 by alleging facts in the proof of claim that are sufficient to support the claim. If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *See Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2nd Cir. 2000). This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, *see In re Lenz*, 110 B.R. 523, 525 (D. Colo. 1990), or by the presentation of legal arguments based upon the contents of the claim and its supporting documents, *see In re Circle J Dairy*, 112 B.R. at 300. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *See In re Consumers Realty & Dev. Co.*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3rd Cir. 1992).

In this case, the Claimants filed their claims in compliance with the Federal Rules of Bankruptcy Procedure, including the attachment of a copy of the agreement upon which its claim is based. Their claims are, therefore, *prima facie*

valid. To rebut that effect, the Debtor essentially alleges that the Court should disregard the Fee Agreement.

Two of the Debtor's objections – the objection that the Fee Agreement does not relate to the condemnation proceeding in which the Debtor obtained an award from the commissioners, and the objection that the Fee Agreement has been terminated by the Debtor pursuant to an order of this Court – are insufficient to shift the burden to the Claimants. First, Paragraph 1.01 of the Fee Agreement defines the claims that are the subject of the agreement as including the proceeding to obtain access to the Debtor's property as well as "any subsequent proceedings instituted by any condemning authority …." Additionally, with respect to the Debtor's motion seeking to reject the Fee Agreement as an executory contract, the Court's order on the Debtor's motion merely permitted the rejection of the Fee Agreement for the limited purpose of hiring new counsel in the condemnation action. As the Court reminded counsel for the Debtor at the hearing on February 7, 2008, the rejection of an executory contract under 11 U.S.C. §365 does not terminate the contract, but merely breaches it. *See* 11 U.S.C. §365(g).

Regarding the Debtor's other objections to claim numbers one and two, the evidence submitted by the Debtor at the hearing was sufficient to bring the legitimacy of the secured claims into question and to overcome the *prima facie* validity of such claims. Thus, it became incumbent upon the Claimants to establish the validity and amount of their claims by a preponderance of the

-8-

evidence. The Claimants submitted the Fee Agreement and documents from the underlying state court proceedings, and they testified extensively regarding their work for the Debtor. Additionally, Trantham's legal assistant, Lisa Johnston, testified credibly regarding her involvement in the state court proceedings and her many communications with Retherford regarding the state court litigation.

In general, in interpreting an attorney fee agreement under Texas law, it is not enough to simply say that "a contract is a contract." *Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 560 (Tex. 2006). The Texas Supreme Court has recognized that there are ethical considerations overlaying the contractual relationship:

> In Texas, we hold attorneys to the highest standards of ethical conduct in their dealings with their clients. The duty is highest when the attorney contracts with his or her client or otherwise takes a position adverse to his or her client's interests. As Justice Cardozo observed, "[a fiduciary] is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." Accordingly, a lawyer must conduct his or her business with inveterate honesty and loyalty, always keeping the client's best interest in mind.

*Lopez v. Muñoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 866-67 (Tex. 2000). The Texas Supreme Court has recognized that contingency fee agreements serve two main purposes – "they allow plaintiffs who cannot afford to pay a lawyer up-front to pay the lawyer out of any recovery," and the contingent fee offers "the potential of a greater fee than might be earned under an hourly billing method" in order to compensate the attorney for the risk that he or she will receive "no fee whatsoever if the case is lost." *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945

S.W.2d 812, 818 (Tex. 1997). In exchange, the client is largely protected from incurring a net financial loss in connection with the representation. *Hoover Slovacek LLP,* 206 S.W.3d at 561.

In condemnation cases, contingency arrangements are typically based on a percentage of any award of money granted over and above some specific amount, such as the amount initially offered by the condemnor. *See, e.g., Harwood v. Hunt*, 473 S.W.2d 287 (Tex. Civ. App. 1971). In this case, however, the Fee Agreement provides that the Claimants will receive 40% of any award collected as a result of a condemnation suit – without regard to whether that award exceeds or is less than any amount offered in settlement prior to litigation. In evaluating the fairness and enforceability of the Fee Agreement, it is significant that Crosstex made a settlement offer only after the Claimants had represented the Debtor for several months. Retherford, who was engaged in other litigation and was financially unable to pay off several mechanic's liens on the subject property, could not have afforded to hire an attorney on an hourly basis to represent the Debtor in the condemnation action. It is also significant that the Claimants successfully negotiated an agreement with Crosstex to move the pipeline so as to cause less disruption and damage to the Debtor's property.

The Debtor conceded at the hearing on February 7, 2008, that claim numbers one and two are secured claims if the Fee Agreement is found to be enforceable. The Debtor, however, raised an additional objection to enforceability of the Fee Agreement at the conclusion of the hearing. The Debtor asserted in its

closing argument that the claims should be denied, because paragraph 4.03 of the Fee Agreement prohibits a settlement without the consent of the Claimants.

Under Texas law, "[c]lauses in a contract between attorney and client which prohibit a settlement by the client without his attorney's consent are generally held to be unenforceable as against public policy." *Lewis v. S.S. Baune,* 534 F.2d 1115, 1122 (5th Cir. 1976) (citations omitted); *Singleton v. Foreman,* 435 F.2d 962, 970 (5th Cir. 1970) ("Moreover, it is clear that an attorney never has the right to prohibit his client from settling an action in good faith."). The inclusion of such a clause in a contract does not, however, render the contract unenforceable. The Texas Supreme Court's decisions in *Hoover* and *Williams v. Williams,* 569 S.W.2d 867, 871 (Tex. 1978), stand for the principle that if a term within a contract is unconscionable at the time the contract is made, a court may enforce the remainder of the contract, or may limit the application of the objectionable clause.

The question presented to the bankruptcy court in *In re Plaza*, 363 B.R. 517 (Bankr. S.D. Tex. 2007), which was cited by the Debtor in its closing argument, was not whether the offending portion of the fee agreement could be severed and the remainder of the contingency fee agreement *enforced*. The question in *Plaza* was whether a portion of the agreement could be severed and the remaining agreement then *assumed* by the debtor pursuant to §365(a) of the Bankruptcy Code. The Court in that case denied the debtor's request based on the general rule

in bankruptcy is that an executory contract must be assumed or rejected in its entirety. *Id.* at 522.

Here, the Claimants are seeking to *enforce* the Fee Agreement. The Fee Agreement is in writing, and was signed by both the Debtor and Trantham for the Claimants as required by Texas law. *See* TEX. GOV'T CODE §82.065.[3] The Fee Agreement had not been terminated as of the date of the Debtor's bankruptcy, and the Debtor failed to establish cause to terminate the Fee Agreement.[4] Under Texas law, if an attorney hired on a contingent-fee basis is discharged without cause before the representation is completed, the attorney may seek compensation in quantum meruit or in a suit to enforce the contract by collecting the fee from any damages the client subsequently recovers. *Mandell & Wright v. Thomas,* 441 S.W.2d 841, 847 (Tex. 1969).

Based upon the evidence presented and for the reasons expressed herein, the Court concludes that the objections filed by the Debtor to the claims of Raesz and Trantham should be overruled. The Fee Agreement in this case provides for

---

[3] At the claims objection hearing, the Debtor objected to Raesz's claim based on the fact that Raesz did not sign the Fee Agreement. The Debtor failed to submit any authority supporting its argument that §82.065 of the Texas Government Code prohibits one attorney from signing a fee agreement on behalf of another attorney. Moreover, a written contingent fee contract for attorney services signed by the client and fully performed by the attorney, but lacking attorney's signature, is enforceable under Texas law. *See Enochs v. Brown*, 872 S.W.2d 312 (Tex. App. – 3rd Dist, 1994) (disapproved of on other grounds by *Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003)).

[4] The Debtor argued in its post-trial brief that the Claimants waived the Debtor's right to a jury trial by failing to pay the required jury fee. This argument is yet another red herring. Numerous Texas courts have held that the requirement of a jury fee payment is discretionary rather than mandatory, *see, e.g., Almageur v. Jenkins*, 882 S.W.2d 903 (Tex. App. – 13th Dist. 1994), and that the failure to pay the jury fee does not necessarily preclude the entitlement to a jury trial, *see, e.g., Universal Printing Co., Inc. v. Permier Victorian Homes, Inc.,* 73 S.W.3d 283 (Tex. App. – 1st Dist. 2001).

the reasonable value of the services rendered by the Claimants in connection with the condemnation action. Claim numbers one and two filed by the Claimants are hereby allowed as secured claims in the joint and several amount of $67,640, which the Court finds to be the amount reasonably due to the Claimants under the Fee Agreement. All other relief requested by any party is denied.

This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law[5] pursuant to Federal Rule of Civil Procedure 52, as incorporated into contested matters in bankruptcy cases by Federal Rules of Bankruptcy Procedure 7052 and 9014. A separate order will be entered which is consistent with this Memorandum of Decision.

Signed on 4/15/2008

*Brenda T. Rhoades*   SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[5] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.